Good morning, Your Honors. May it please the Court, I'm Michael Friedberg on behalf of the appellants. Ms. Yu came to the United States after the USCIS approved a first preference immigrant petition as a multinational executive manager on her behalf. Based upon Excuse me, Counselor, what did you say your name was? Michael Friedberg. Friedberg. All right. Thank you. Based upon the approved immigrant petition, which was filed on Ms. Yu's behalf, she subsequently filed for an application to adjust her status to lawful permanent residence. She had been working for a company in Taiwan called Thompson Aluminum as a manager, and Thompson Aluminum had set up a subsidiary in the United States to do import-export of various products, general merchandise. In the course of while her application for residence was pending, the government reopened the immigrant petition proceedings and started a series of requests for additional was that basically the government then issued a notice of intent to revoke the immigrant petition. Well, the real question here is whether her job is primarily composed of managerial and executive duties, and she certainly did some of them, but some is not enough. And I guess there were five people who indicated that she did such things as marketing, but the evidence was she did no marketing at all. It was too small to market. So it's a very small business. She sort of ran the business. She did a little bit of everything. And the real requirement is that she be an executive and that the business have progressed far enough so that those are her primary duties. This was a small business. Can you help me with that? Did I misread the evidence here? Well, our position, and we've argued this in our brief, is basically that the government placed undue emphasis on the small size of the company. Clearly, in order to qualify for this category of immigration, as Your Honor pointed out, the duties of the visa applicant must be primarily managerial. Or executive. Correct. Or executive. She's going to be in charge. Exactly. You know, the record contains, you know, very clear evidence of the beneficiary's executive and managerial duties. She was supervising five employees, including at least one manager, the sales manager. And ultimately, I mean, again, as we briefed in our, as we've indicated in our briefs, the government's reasoning throughout this four-step adjudicatory process kept shifting, constantly finding different objections to her duties. But what it finally came down to was that the government pointed out that according to the organization chart that was submitted, there was no one pointed out to handle marketing for the company. And therefore, posited the AO, Ms. Yu will be responsible for marketing. Another part of our argument is that the statute requires that if staffing levels are considered in determining whether an applicant is serving as a manager or an executive, the reasonable needs of the company in its stage of development must be taken into account. Throughout the revocation process, the company, Topset, continued to request that the agency comment on that. The only thing the agency came up with was, you have nobody doing marketing, therefore, Ms. Yu is doing marketing. Well, the petition was filed one year, approximately one year after the company was established. The company earned about $800,000 in its first year of operations. Clearly, for a new company, some marketing would be required. But would that be primarily what she's doing? I don't think so. In the AO's first dismissal of the administrative appeal, they also said, well, you never quantified the percentage of time or how much time Ms. Yu will be devoted to supervising the sales manager. Again, it's sort of nonsensical from my standpoint that when you have a brand new company that's managing $800,000 in sales in its first year, that's going to be a lot of the time of the executive. But again, as we've briefed, and it's central to our argument here, we feel that the agency was so focused on the small size of the company that there was no way to satisfy the agency. There was one obstacle after another. In the first dismissal, the AO made a very big deal about what they called an unusual payment schedule, which brought everything into question as far as the company's organization. In addition to the absence of somebody to do marketing and so on, as mentioned before. Well, they mentioned also, it wasn't just marketing. It said that she was involved in daily operations, routine operational activities, planning in-house training, designing a computer system, and so forth. These things are operational kinds of things, not primarily executive or the first dismissal, the first decision by the AO. We, in our motion to reopen, argue that they misrepresented the duty regarding her involvement in the computer. What the description of duty said was that she would participate in the setup of the computer system. So again, Your Honor, the agency was unusual payment schedule was provided. In the final agency decision, they said, well, the duties are generic, and they paraphrase the regulatory definition of an executive and manager. Again, when their big objection, the unusual payment schedule, could not be used to disqualify. Then it was the generic duties that paraphrased. And honestly, again, we've set out her duties in our brief as they were described. I don't want to take that page. There may be some overlap, which may be unavoidable between the regulatory description for a manager and executive, but it is not generic or paraphrasing. Let me ask you this. Is the company still around? The company's still around. And how much business is it doing now? They're not doing quite as well. I don't have that figure. They have four employees. They're still involved in importing general merchandise, cookware, and exporting to Taiwan. And what's her present immigration status? Well, at this point, she's still pursuing this petition. We have a backup petition on behalf of her husband that is in process. It's pending. He's here now? They're all here. They're all here. They're still all here. She's been fighting this ruling. So her family is now here. Her family's still here. Again, Your Honor, and this brings us to one of the other arguments that we raised in our brief, which is, you know, what constitutes good and sufficient cause that would justify the government to revoke a petition? You know, in our brief, we cited two precedents of this court that require substantial evidence to be presented by the agency to justify a revocation. You know, once the government says, OK, you're fine, we're approving your petition, there's reliance. People's lives change. And for the government simply to make a U-turn and begin to say, oh, this company is too small to require an which, when the objection is answered, another objection is raised. Are you saying that the government at one time said that we think you'll qualify and then changed its mind? Absolutely. The petition was originally approved. And then... In the second petition, was that argument made? There was no second petition. Basically, the procedure is, is once the government decides that it wishes to revoke, the issue was called the notice of intent to revoke. The... I was speaking of the second decision. I'm sorry, Your Honor. So what was the question? 2006, yeah. I didn't understand your question. The second decision as opposed to the first decision. And what was that? And the question was, did they justify the revocation specifically because of the size of the company and the nature of the duty she was performing because of the size of the company? No, they didn't. The A.A.O. said we can use the size of the company as one factor, which we agree with. But again, you know, we feel that there was a hidden agenda. You know, as we said, in the first dismissal, there was an unusual payment schedule. Once that was satisfied, the duties were generic and paraphrased. And, you know, we could have tried to file another motion to reopen. But honestly, it seemed like it would be futile because there'd be something else. You know, in its final decision, the agency says, well, you know, we may have done a better job explaining, you know, why Ms. Yu doesn't qualify as a, you know, clearly they could have. But, you know, honestly, I don't think there was any satisfying the agency. And we would ask this Court to find that the agency decision in this matter was contrary to law. It was an abuse of discretion. It was unduly influenced by the small size of the company, unlike the precedent decisions, which provide that the size of the company may be used as a factor. In this case, we argue that it was the primary, if not the sole factor. If I have any time, I'd like to leave it for rebuttal. Any questions? I don't have any time, but our presiding judge may give you a minute. Any other questions? Is she working full time there? Yes. Yes. And three other people? Correct. And, you know, and again, you know, in our present economic climate, it would seem to me that we're having enough time keeping people employed and trying to go out and find reasons to close our businesses is not the best policy. Thank you, Your Honor. All right. May it please the Court, Max Weintraub representing Donald Neufeld and the other federal government defendants. Initially, I'd like to, I'm in an uncomfortable position of having to defend our economic times. I hope I don't, I'm not on the hook for that. This case involves a challenge by Topset International to CIS's revocation of the employment-based immigration visa petition. As Judge Nelson correctly surmised, this revolves entirely around whether she qualifies as a multinational executive or manager. I'd like to clarify one thing. It's not, the real question at hand isn't even whether she is, in fact, a multinational executive or manager, but whether the evidence presented to the agency compels a finding that she is. And I think it's a distinction worth making. Compels a finding that she is not? I'm sorry? Whether the evidence compels a finding that she is not. That she is. The agency has found that she is not. So to reverse the agency, you'd have to, there would have to be a finding that compels a finding that she is. Well, that was at the initial stage before they'd seen additional information. Despite counsel's description of a hidden agenda, I believe that's a bit unfair. As the agency received additional evidence and additional information, additional materials about what it is that the company did, the organizational charts, the job descriptions, what she did, or at least what she's purporting to have done, the agency revised its decision. Love correct. Where did the agency get that information? They had sought additional information. It was provided by Topset International. And that was the record evidence before it. The agency wasn't out there searching for information. The job descriptions came from Topset. The tax forms came from Topset. The organizational chart came from Topset. And that organizational chart, you know, I have it here. It shows her as president. And the next layer there is the factory manager, sales operations manager, finance accounting manager with names of people, sales supervisor, sales assistant. Which represent the needs of the company, which the agency took into account. I'm not certain that five or six blocks looks impressive. But, you know, that's not the issue at hand, Your Honor. And I certainly don't mean to cast my opinion into it. Counsel pointed out that Ms. Yu supervises a supervisor. The statute clearly says it's supervising. Single supervisor doesn't make one an executive or a manager. She's not a manager. She's running this. One, two, three, four, five, six of them all together. Looking at the record evidence as a whole, Your Honor, I'm not sure that that chart tells you what she does, what she manages, what her day-to-day operational duties are. The agency sought job descriptions. And as we heard earlier, they got the full page there that lists vague descriptions of what managers might do. That job description, while it might suggest what the executive of a large, multinational, multifaceted organization might do, does not address what a multinational manager or multinational executive might be expected to do at a company with the needs and size of Top Set International. It's just simply not a job description. At the Justice Department, there are trial attorneys, there are supervisory litigation consultants, and there are assistant directors. The job description of a trial attorney is to draft briefs and motions and to appear before the district courts and appellate courts of this nation representing the federal government. The job description of a senior litigation counsel is to draft motions and briefs and appear before the government and to supervise trial counsel and to assist them in their brief writing. I have just recently been promoted to senior litigation counsel, which is why I'm familiar with the differences between the two. I've suddenly had, with no additional pay, I've suddenly had a whole lot of extra work dumped on me. But my point, though, is that those are job descriptions. Marketing, interfacing, planning, and designing are not job descriptions. Counsel pointed out that MISU was working for the company for a year. In that year, they clearly had time to discern what it was that MISU did on a daily basis. When the agency sought a job description, they could have provided it. It may very well be that MISU is, in fact, a multinational manager or executive. The record, however, doesn't compel that. The record that the agency had, that the district judge had, and it's before you now, doesn't demonstrate that she was acting primarily as a manager or an executive. As Judge Nelson clearly pointed out, she's doing operational work day to day at a company that's trying to survive in this tough economic market. Yeah, but so how does a company that's starting out with just a handful of employees, how are they ever going to qualify? Well, I'm not certain. I represent the agency. I don't work for the agency. And I've never had to plan out how a multinational manager or executive might operate. It may be that until they expand their operations and expand their needs, there simply isn't a need for a multinational executive or manager. That's the position that they tried to pigeonhole her into, and it clearly appears that they did attempt to pigeonhole her into it. Somebody's got to run the operation. Running the operation is one thing. Satisfying the statutory requirements of a special visa for a multinational executive or manager is a different issue entirely. We're not saying that the government has never said that there's no need for a president of TopSat International. What the agency found, based on the record evidence before it, was that Ms. Yu did not qualify for the special visa petition of a multinational executive or manager under the evidence before it. There was a... Well, what would she have qualified for? I apologize? What would she have qualified for? Your Honor, I haven't any idea at all. It's not before the court. And I certainly didn't invest any time into trying to consider what... But you just got promoted. You're supposed to know all this. Your Honor, if I could back up a moment. Counsel made some hay of the fact that this was a revocation and not a denial. Love Korean Church, I guess, is going to be a very popular case today, and I'm going to raise it again. And no, I've not provided it. I was actually away all weekend and just saw it just last night, so I haven't yet had a chance to provide it to the court. However, I did read it. And footnote three... Apologize for reading to the court, but footnote three says, contrary to the Church's contention, our analysis is not affected by the fact that this case arises out of visa petition revocation, as opposed to the initial denial of a visa petition. CIS may revoke an approved petition for good and sufficient cause under 1155. The footnote goes on. The Bureau of Immigration Appeals has reasonably interpreted this statutory requirement to be satisfied that the evidence of the record at the time the decision was issued warranted a denial of the petition. In other words, it doesn't matter, as this Court found last Friday, it doesn't matter that this is a revocation versus a denial. The statutory requirements are the same and the analysis is the same. If Ms. Yu wouldn't have qualified on the record evidence before, then she doesn't qualify. It doesn't matter that it's a revocation. It doesn't matter that it was a denial. You'll submit that to the court? Yes, Your Honor. What's the name of it again? It's Love Korean Church versus Chertoff. Actually, the copy here, it was just Friday. It was number 0755093. Judges Canby, Pivey, and Millon D. Smith, Jr. Thank you. You know, the next head of that organization is a former Ninth Circuit law clerk. The next head of which organization, Your Honor? The one that's protecting our country. Oh, I'm sorry. I thought you meant Love Korean Church. I found that somewhat shocking. Okay, but Janet Napolitano. Yes, she is. She was just on premises recently. Was she? Yes. Our office is housing the transition team. She did change a few things. I would not pretend to be disappointed if she didn't change a few things. You'll like her very much. Your Honor, we were asked to be familiar with the Brazil Quality Stones case. And I think it's very plain why we were asked to be familiar with the case. That case is this case. Multinational manager of a small organization failed to provide enough evidence whether or not she was, in fact, a multinational manager. The evidence simply doesn't compel the finding that she was one. It does not warrant remand. It doesn't warrant a dismissal. It doesn't warrant overturning the district court. I know I have more time. I'm going to stand down and, again, encourage this court, unless there are further questions, to affirm the decision of the district judge. Were you in the Army? No, sir. Where'd you get that phrase, stand down? It simply describes what I'll be doing. Very good. Very good. All right. Are there any additional questions, Your Honor? No questions. Thank you very much. Thank you. Sure. You can stand up. Counsel, you didn't address the Brazil Quality Store case. Right. You're right. And I'm prepared to do that. I was prepared to do that. That's a very interesting case. And there are similarities. But, I mean, there are significant differences between Brazil Quality Stones and the instant case. The first major difference is that in the BQS case, the court found that the agency had determined that BQS has not yet reached the level of organizational sophistication in which its president could devote his primary attention to managerial duties, as opposed to operational ones, even though he held a position at the head of the corporate structure. In this case, as I mentioned earlier, we repeatedly requested the government to consider the needs of Topset at its stage of development, going into its second year, where, you know, having the president do some marketing would not be inappropriate and would not vitiate the fact that she is still primarily engaged in managerial and executive duties. That's one difference. Second difference is the procedural history in BQS versus the instant case. BQS involves denial by the district director of the CIS and then a dismissal of an appeal by the administrative appeals office. Our case, in the instant case, we have four levels of adjudications. We have the notice of intent to revoke. We have the revocation. We have the initial AAO dismissal. We have the dismissal of the motion to reopen and reconsider. And we, you know, our position is that the review of the record would show that the agency was unduly influenced by the small size of the company, that they constantly shifted, you know, the objections, nitpicked, misused duties. You made that argument. Right. I understand it. Okay. So that's another difference. Third difference is BQS was arguing that its president qualified as a functional manager. Under the multinational executive manager category, one qualifies as an executive or manager either by virtue of being a supervisory manager, supervising other supervisory or managerial employees, or by being responsible, managing a significant function of a department. Yeah. Let me ask you, you told us you had another string to your bow with the husband. Now, what are you going to do about him? Well. Is that something pending? It's something pending, yes. There is a path. I mean, if. Yeah, I just want to know what's pending. Misused husband is also involved in import export. He went through the preliminary process of immigration and obtained labor certification, whereby he has a prospective employer, not Topset, but a different company that is offering him a position. That company went through recruitment and could not locate a qualified American to do the job. And now he's in the second stage of immigration, which is the petition. The major hurdle there, Your Honor, is that the quota. The law simply does not provide enough visas on an annual basis for the admission of skilled workers. And people have to wait. And that would be the major hurdle in this case. They have a raffle every year. Right, right. The lottery, which favored the Irish in the first few years. One final point regarding the Korean church. Sorry. Yeah, but your time's up. OK. Sorry. We believe that the Korean church case holding that the revocation is the same as denial is dicta. The decision was not based on that. We got that. We got it. Thank you. Thank you. All right. Now we take the next matter. Submitted on the briefs. Yosef versus Mukazi. And then we come to the next item. Air attacks versus MGA Entertainment.
judges: Pregerson, Nelson, Thompson